

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ APR 14 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY AND ALLSTATE NEW JERSEY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL LEVY A/K/A DIMA, ALEX LEVY A/K/A SASHA, HOI YAT KAM, M.D., SALVATORE LENTINI, D.C., YAN YAN YU A/K/A ANGELA, HAROUTYOUN TIKRANIAN, D.C., LAI FAN XUE, A/K/A LISA, CHENG HE SU, ALEKSANDRA GASHINSKAYA, M.D., BRONX SHERIDAN MEDICAL, P.C., NEW LITE BRONX MEDICAL, P.C., COMFORT CHIROPRACTIC, P.C., ALIGN CHIROPRACTIC CARE, P.C., QI BAO ACUPUNCTURE, P.C., TAI JI ACUPUNCTURE, P.C., DESMOND CONNELL, ESQ., MARY JIMENEZ, LLOYD MODESTO, RONALD SCHWARTZ, DAN MADRID, BEST STAR ADVERTISEMENT CORP., PRO-TWO MANAGEMENT CORP., AND UNITED MEDICAL BILLING & COLLECTION CORP.,<br><br>Defendants. | Civil Action No._____<br><br>**CV10-  1652**<br><br>BLOCK, J.<br><br>POHORELSKY, M.J. |

### AFFIDAVIT OF MICHAEL BRUNO IN SUPPORT OF PLAINTIFFS' MOTION FOR PREJUDGMENT ATTACHMENT OF ASSETS

I, Michael Bruno, upon oath do depose and state based upon personal knowledge as follows:

1

## I. INTRODUCTION

1. I am employed as a Special Investigations Unit Analyst by Allstate Insurance Company.

2. The plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate New Jersey Insurance Company (collectively "Allstate" or "Plaintiffs") are corporations duly authorized to carry on and do business in the State of New York

3. Allstate's Special Investigation Unit ("SIU") was established to investigate and respond to inaccuracies and inconsistencies in the presentation of insurance claims, and to monitor the effectiveness of the company's fraud control efforts.

4. As an SIU Analyst for Allstate, I investigate claims and claims data to detect and combat fraudulent insurance-claim activity.

5. I have investigated hundreds of claims arising out of reported automobile accidents occurring in my geographic area of responsibility, which includes the State of New York.

6. The facts set forth below in this affidavit and in Allstate's Complaint were obtained during Allstate's investigation.

## II. SUMMARY OF INVESTIGATIVE HISTORY AND FINDINGS

7. During Allstate's investigation, hundreds of pages of public-record documents were analyzed, including, but not limited to, records pertaining to the defendants' ownership and control of the medical clinics detailed in the Complaint. In addition, claims file data in connection with defendants' patient claims was analyzed. Moreover, I caused field investigation and in-person interviews to be conducted. All of the documents were maintained by Allstate, in good faith, in the ordinary course of conducting its business of insurance.

2

8. It was not until Allstate had investigated many automobile insurance claims involving invoices and reports from defendants that a pattern of fraudulent conduct emerged.

9. Such analysis would have been extremely difficult—if not impossible and/or unwarranted in the employment of sound business judgment—during the early stages of the defendants' scheme to defraud Allstate.

10. Allstate's investigation included the following:

　　1) Examination of Allstate's total exposure to the defendant medical clinics in New York, in connection with first party claims;

　　2) Analysis of corporate filings and records regarding the defendant corporate entities to determine (ownership) status of the identified co-conspirators; and

　　3) Marshalling and analysis of all relevant claims data regarding the defendants.

## II. RACKETEERING ACTIVITY - - MAIL FRAUD

11. Every claim file reviewed involved multiple mailings including, among other things, the notice of claim, initial policies, insurance payments, claims settlement checks, medical records, invoices, accident reports, appraisals, photographs and the return of the cancelled settlement drafts to the financial institution(s) from which the draft(s) were drawn, as well as return of settlement draft duplicates to the insurance carrier's home office for filing.

12. Allstate routinely receives medical records and bills through the U.S. mail, including those claims identified in Allstate's Complaint.

13. Allstate estimates that the defendants' fraudulent medical billing scheme generated hundreds of mailings. *See* Complaint at Exhibit 4 (selected examples of RICO predicate/mail fraud acts).

### III. ALLSTATE'S INJURY

14. The injury to Allstate caused by the defendants' fraud includes, but is not limited to: (1) Allstate's inability to conduct its insurance businesses on the basis of true, accurate, and complete assessments of legitimate, compensable claims; (2) the loss of funds paid for false and fraudulent claims; (3) the expenses incurred to review, adjust, investigate, litigate and pay the false and fraudulent claims; and (4) the past and continuing financial burden incurred by Allstate to establish and implement systems and policies to detect false, fraudulent, and inflated claims.

15. As detailed in the Tables contained in Exhibits 5-10 to the Complaint, Allstate paid at least $918,000.00 in connection with No-Fault claims in which defendants allegedly administered testing and/or treatment to defendants' patients/Allstate claimants. Allstate's investigation of additional first-party claims is ongoing.

16. Allstate incurred thousands of dollars of expenses in connection with in-house and outside counsel, field investigators, court reporters, medical and legal experts who are assisting in the continuing investigation of defendants' fraudulent activity. These costs continue to accrue.

17. The defendants' fraudulent scheme went undetected until Allstate had sustained substantial financial injury because defendants' false medical reports and false invoices appeared legitimate on their face.

18. In each alleged loss, payment by Allstate was made in reliance upon the false medical documentation and/or representations submitted by the defendants.

## IV. DEFENDANTS' KNOWN ASSETS

19. Given the fraudulent and deceitful nature of the defendants' actions, there is a significant likelihood the defendants will likely act (a) to further conceal assets available to satisfy judgment, (b) dissipate assets, and/or (c) transfer assets beyond this Court's jurisdiction.

20. There exists no liability insurance known to Allstate available to the defendants to satisfy any judgment recovered by Allstate in this case.

21. In preparing to file its Complaint, Allstate investigated the assets held in the names of the defendants. The following is a list of properties in which one or more of the defendants have some interest:

### A. Alex Levy

|  |  |
|---|---|
| 9954 63rd Ave<br>Rego Park, NY | $846,500 |
| 14764 77th Ave<br>Flushing, NY | $446,000 |

### B. Hoi Yat Kam

|  |  |
|---|---|
| 67-45 Clyde St<br>Queens, NY 11375 | $828,500 |
| 169-17 67th Ave<br>Flushing, NY 11365 | $649,500 |

C. <u>Salvatore Lentini</u>

| | |
|---|---|
| 63 Hardscrabble Rd<br>Chester, NY 10918 | $450,000 |

D. <u>Yan Yan Yu</u>

| | |
|---|---|
| 5664B 184th St<br>Fresh Meadows, NY 11365 | $345,000 |

22. Allstate was unable to identify any other assets located within New York available to the defendants to secure and satisfy judgment, other than the assets for which Allstate presently requests an attachment of real property or personal property assets, including any and all first-party ("No-Fault") benefits currently due and owing to the PC Defendants.

23. Absent prejudgment remedy in the form of attachment against the defendants, Allstate: (1) is not aware of any other means by which the defendants would satisfy judgment; and (2) will be prejudiced in obtaining satisfaction of judgment.

24. I am not aware of any pending or potential counterclaims against Allstate by any of the above-captioned defendants.

25. All of the allegations in Allstate's Complaint and this Affidavit are true and accurate to the best of my knowledge. I certify that so far as any of the foregoing assertions are made upon information and belief, I believe the information to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 31st DAY OF MARCH 31, 2010.

*Michael Bruno*

## Certificate of Conformity in Accordance with N.Y. CLS CPLR 2309(c)

State of _PENNSYLVANIA_

County of _DAUPHIN_

On the _31ST_ day of _MARCH_, in the year _2010_ before me, the undersigned, personally appeared _MICHAEL BRUNO_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _HARRISBURG, PA_. (insert the city or other political subdivision and the state or country or other place the acknowledgement was taken).

_[signature]_

Notary Public

Printed Name: _Deborah M. Donofrio_

My Commission Expires:

---
COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Deborah M Donofrio, Notary Public
Lower Paxton Twp, Dauphin County
My commission expires Jul. 02, 2010
---